[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case, which was tried to the court, involves the dissolution of a partnership, and the amount owed, if any, to each of the partners. The plaintiffs are Wellington Systems, Inc. (WSI), and its two principal shareholders and officers, Fred Stahl and Gene Goodman. The defendants are Redding Group, Inc. (RGI), and its two principal shareholders and officers, John Theys and Lydia Fazio.
The plaintiffs commenced this suit in 1984 and their amended complaint of March 13, 1985, contained six counts. The first count was against RGI and alleged that this defendant breached an agreement to give Stahl and Goodman ownership interests in RGI. In the second count, which was directed at RGI, Theys and Fazio, the plaintiffs alleged that the defendants made certain representations that Stahl and Goodman would become shareholders in RGI to the extent of 37.3% of the total shares, and that the defendants knew that such representations were false and fraudulent. In the third count, the plaintiffs alleged that RGI interfered with their customers and caused monetary damages to the plaintiffs. In the fourth count, the plaintiffs alleged that Theys and Fazio interfered with the plaintiffs' contractual rights with RGS. In the fifth count, the plaintiffs alleged that RGI, Theys and Fazio engaged in a conversion of their funds. In the sixth count of their complaint, the plaintiffs seek an accounting and the appointment of a receiver for a partnership, Redding Group Services (RGS), formed by the plaintiffs and the defendants.
The defendants filed an answer generally denying the material allegations of the complaint, and a revised special defense, set-off and a counterclaim dated September 30, 1988. In their special defense, the defendants allege that the plaintiffs breached their partnership agreement, their fiduciary duties to the defendants, the implied covenant of good faith and fair dealings, and engaged in a conversion, and a "secret plan" to deprive Theys and Fazio of their ownership of RGI. In their counterclaim, the defendants claim that as a result of the defendants' activities, RGI was forced out of business, and that they were deprived of their investment in RGI and had incurred legal fees in connection therewith.
In 1989, the defendants moved for a summary judgment as to the first five counts of the six count complaint. This motion was granted by this court in a memorandum of decision dated March 1, 1989, the basis for which was that a certain handwritten "letter CT Page 6159 of intent" dated March 26, 1984, relating to Stahl and Goodman owning stock in RGI, was, by its own terms, contingent upon a formal agreement being executed. "[T]his letter of intent is only a moral commitment and is contingent upon and subject to a formal agreement which is mutually satisfactory." Since no such formal agreement was ever entered into, the decision stated that "the five counts of plaintiffs' complaint, which are based on an alleged agreement which never came into existence, cannot survive the defendants' motion for summary judgment."
The only causes of action that were tried in the present case were the sixth count of the amended complaint which seeks an accounting upon the dissolution of the partnership RGS, and the defendants' counterclaim. The plaintiffs contend that they are entitled to a share of the money received by the defendants on sales based on contracts which the plaintiffs negotiated before the partnership was dissolved in July, 1984. The defendants contend that when the partnership was dissolved, the plaintiffs' right to future money was terminated, and the only funds to which the plaintiffs are entitled would be any accounts receivable at the time the partnership was terminated. There is also a dispute concerning the allocation of expenses between the parties.
The evidence including the exhibits demonstrate the following facts. WSI was a computer consulting firm, and RGI was a computer software producer. In a letter from the defendants to the plaintiffs dated November 11, 1981, the parties agreed on the percentage due the plaintiffs based on gross receipts from sales generated by the plaintiffs[1]. Thus, WSI became, in effect, a sales agent for computer software developed by the defendants, which included, among other products, an innovative software program called "GrafTalk" which enables graphic designs such as pie and bar charts, to be created on a computer.
In a letter of October 11, 1982, the plaintiffs and defendants altered their relationship by forming what was termed a partnership between WSI and RGI to be known as Redding Group Services (RGS). This letter also discussed the plaintiffs' share of income from sales of RGI products made by the plaintiffs through the RGS partnership.[2] This letter was obviously very vague as to many of the details of a "partnership" and what would occur in regard to a division of future revenue upon a termination of the partnership. Moreover, the partnership agreement does not refer to an allocation of expenses, with the one exception referred to in footnote 2 for sales to CT Page 6160 distributors, dealers and end-users.
The evidence indicates that WSI continued to negotiate the terms of contracts on behalf of RGI products, but through the medium of a partnership, and that their commissions increased under the new format. The receipts from such licensing agreements were deposited in an RGS account and the history of the dealings of the partners indicates that RGI took 50% of the revenues off the top, so to speak, and the balance was split fifty-fifty. This arrangement, however amorphous, lasted from October, 1982 until Theys and Fazio, on behalf of RGI, terminated the partnership in July, 1984.
It should also be noted that RGI had copyrights on its products such as GrafTalk, and the "sale" of such a product actually consisted of selling the right to use the product in exchange for royalty payments. The end-user or licensee was not obliged to use RGI products, such as GrafTalk, for its customers for any particular period of time, or generally at any specified minimum rate, but when it did, it was obliged to pay RGI, or later RGS.
The evidence further indicated that approximately $1,000,000 of revenue was received by RGI after the July, 1984 termination of RGS, from contracts negotiated by the plaintiffs at a time when the partnership was in existence. The plaintiffs claim that they are owed one-third of this amount, or approximately $330,000, the major component of which was a software licensing agreement with Zenith Data Systems Corporation (Zenith) that had been negotiated by the plaintiffs prior to dissolution of the partnership. In addition, a "program distribution agreement" negotiated by the plaintiffs with Digital Equipment Corporation (DEC) produced certain revenues after RGS was dissolved by the defendants.
The defendants testified that Stahl and Goodman had promised to provide $100,000 to RGS for advertising purposes. This money was never forthcoming but, as pointed out previously, RGS never became a part of RGI, and Stahl and Goodman never received any shares of stock in RGI. Furthermore, although the defendants blame Stahl and Goodman for not providing RGS with $100,000, the defendants dissolved the partnership and thus precluded the two individual plaintiffs from obtaining any ownership interest in RGI. In any event, the reference by the plaintiffs to an infusion of $100,000 for an RGS advertising campaign, although it CT Page 6161 undoubtedly would have helped RGS and its partners, does not constitute wilful misconduct on the part of the plaintiffs that would justify the dissolution of the partnership on that specific ground.
The defendants also testified at length about the machiavellian plan of Stahl and Goodman to take control of their company, RGI, and their testimony in this regard is essentially accepted.[3] All it means, however, is that Stahl and Goodman saw a successful company, RGI, and decided that they would like to take it over if possible or at least participate in its success. Negotiations ensued which ultimately took a bitter turn and were terminated. Thus, the plaintiffs' efforts to take over RGI were successfully thwarted by the defendants, but this does not mean that the plaintiffs acted illegally or wrongfully, and it also does not follow that the plaintiffs' conduct caused the partnership to be dissolved as claimed by the defendants.
Finally, the evidence indicated that the parties had each been responsible for its own expenses during the time of their relationship. RGI paid for its expenses in developing the software and product support, and WSI paid for its own expenses in negotiating the terms of the various contracts.
There are two main issues in the accounting element of this case. The first is whether the plaintiffs are entitled to compensation for revenue received by RGI after dissolution of the partnership. The second issue concerns accounts receivable and funds in the partnership's account on July 13, 1984, the date the partnership was officially dissolved. The final issue involves the defendants' counterclaim in which they seek a million and a half dollars on the basis that the plaintiffs ruined RGI and caused its ultimate demise.
Based on the foregoing facts, the following conclusions are reached: (1) that because of the specific wording of the October 11, 1982 letter, the defendants had, the absolute right to terminate the partnership at any time and that they exercised this right in July, 1984; (2) that the agreement of October 11, 1982, provides for the respective rights of the partners to this partnership, RGS, upon dissolution because it specifically states that in the event of dissolution, neither RGS or WSI would "receive or maintain any rights whatsoever to RGI products"; (3) that, in addition, by reason of the nature of the royalty payments due RGI, the contracts with the users set forth the CT Page 6162 terms of payment, but did not oblige the user to take any specified amount of product in the future, and therefore, when the partnership was dissolved, the plaintiffs, as selling agents, had no right to share in future royalties; (4) that the plaintiffs failed to prove that their efforts in negotiating contracts resulted in royalties received after the date the partnership was dissolved, whereas the defendants successfully demonstrated that they negotiated the terms of a new contract with Zenith effective October 8, 1984, and that royalties received from DEC were a product of negotiations they conducted in 1985; (5) that neither the claim of the defendants, as set forth in their counterclaim, that the plaintiffs wrongfully terminated the partnership RGS by virtue of their scheme to wrest control of RGI from Theys and Fazio, nor the claim that the plaintiffs breached their fiduciary or partnership duties have been proved, and hence the provisions of the Uniform Partnership Act, General Statutes §§ 34-70 and 34-76, relating to partners who have caused a "dissolution wrongfully," are not applicable; (6) that more specifically, the defendants failed to prove that the demise of RGI was the fault of the plaintiffs, as a change in market conditions and/or lack of business acumen on the part of Theys and Fazio could have been the reason for their company's fate; (7) that the agreement by the plaintiffs to infuse RGS with $100,000 for advertising purposes was contingent upon Stahl and Goodman receiving an interest in RGI, which never materialized, or alternatively, merely constituted non-binding plans for the future; (8) that the partnership agreement failed to specify the division of expenses between the parties, but that it is equitable to follow the prior practice of the parties in which each was responsible for its own expenses, rather than basing the allocation of expenses on the respective percentage of gross revenues received by the parties; and (9) that $46,000, which was the final balance in RGS's bank accounts and is currently held in escrow by counsel for the plaintiffs, may now be released upon payment to the defendants, based on the formula of the first 50% to RGI, with the balance to be divided equally, of $34,500, to be sent to them via their counsel, with the balance of $11,500 to be retained by the plaintiffs.[4]
So Ordered.
Dated at Stamford, Connecticut, this 21st day of June, 1995
William B. Lewis, Judge CT Page 6163